```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:
                                                CASE NO. 07-23133
JANE KJOLLER, MD
(dba Jane Kjoller, MD),
                        Debtor.                 DECISION & ORDER
_____

THE BANK OF CASTILE,

                        Plaintiff,

            v.                                  AP NO. 08-2061

JANE KJOLLER, MD,

                        Defendant.
_____
```

### BACKGROUND

On December 21, 2007, Jane Kjoller, MD (the "Debtor") filed a petition initiating a Chapter 13 case. On the Initial Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) she owned a residence at 24 Monroe Street, Honeoye Falls, New York, which had a fair market value of $215,000.00 and was encumbered by two mortgages in favor of the Bank of Castile, one mortgage in the approximate amount of $124,865.00, and the other in the approximate amount of $19,800.00; (2) she had a medical practice that she valued at $1.00; (3) she had office equipment, consisting of phones, a computer, furniture, an EKG machine and spiromery, valued at $3,450.00; (4) she had no accounts receivable; (5) she had an outstanding February 2007

business loan debt to the Bank of Castile in the approximate amount of $151,800.00 and an outstanding June 2003 business loan debt to the Bank of Castile in the approximate amount of $18,600.00; and (6) she had in excess of $57,000.00 in unpaid income taxes due to the Internal Revenue Service (the "IRS") and the State of New York for the tax years 2004, 2005 and 2006.

On January 4, 2008, a notice was mailed to the Debtor's creditors, including the Bank of Castile, which notified them of the filing of the Debtor's Chapter 13 case and a Section 341 Meeting of Creditors (the "Meeting of Creditors") scheduled to be held on January 28, 2008.

On January 24, 2008, the Bank of Castile filed an Objection (the "Objection") to the Confirmation of the Debtor's Chapter 13 plan (the "Plan"), which the Debtor filed on December 21, 2007 along with her petition.[1] The Objection asserted that the Plan did not comply with the provisions of Section 1325 of the Bankruptcy Code because it did not propose to pay the secured business loan debt owed to the Bank of Castile (the "Business Loan"), at least to the extent of the value of the Bank's collateral for the loan.[2]

---

[1] The Plan proposed to pay the two Bank of Castile residential mortgages outside of the Plan in accordance with the terms of the mortgages, since there were no arrearages on the mortgages at the time of the filing of the Debtor's petition.

[2] The Objection did not describe the Bank's collateral.

**Page 2**

On January 28, 2008, the Bank of Castile filed a claim in the amount of $145,053.92, based upon a January 31, 2007 Commercial Variable Rate Promissory Note, which indicated that it was secured by equipment, inventory and accounts receivable (the "Business Loan Claim").

On January 28, 2008, the Debtor's Chapter 13 trustee (the "Trustee") conducted the Meeting of Creditors, which was attended by attorneys for the IRS and the Bank of Castile. The Court's docket indicates that the Meeting was adjourned to March 31, 2008 and that at the adjourned Meeting, the attorney for the Bank of Castile appeared, but the Debtor and her attorney failed to appear.

No confirmation hearing or other proceeding was conducted by the Court in the case before May 5, 2008, when the Debtor filed a voluntary notice converting her Chapter 13 case to a Chapter 7 case. On May 7, 2008, an Order was entered converting the case to a Chapter 7 case (the "Order of Conversion").

On July 31, 2008, the Bank of Castile filed an Adversary Proceeding (the "Dischargeability Proceeding"), pursuant to Section 523(a)(4) of the Bankruptcy Code.[3] The Complaint in the Proceeding

---

[3] Section 523(a)(4) provides that:

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]

alleged that: (1) at the time of the filing of her Chapter 13 petition, the Debtor was engaged in business, as defined by Section 1304 of the Bankruptcy Code[4]; (2) as specifically provided for in Section 1304, the operation of the Debtor's business was limited by the provisions of Sections 363(c)(2) and (4),[5] which prevented her from using cash collateral, including the proceeds of any accounts receivable, unless she obtained the consent of the Bank of Castile,

---

11 U.S.C. § 523 (2008).

    [4]    Section 1304 provides that:

    (a) A debtor that is self-employed and incurs trade credit in the production of income from such employment is engaged in business.

    (b) Unless the court orders otherwise, a debtor engaged in business may operate the business of the debtor and, subject to any limitations on a trustee under sections 363 (c) and 364 of this title and to such limitations or conditions as the court prescribes, shall have, exclusive of the trustee, the rights and powers of the trustee under such sections.

    (c) A debtor engaged in business shall perform the duties of the trustee specified in section 704 (8) of this title.

11 U.S.C. § 1304 (2008).

    [5]    Sections 363(c)(2) and (4) provide that:

    (c) (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

        (A) each entity that has an interest in such cash collateral consents; or

        (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

    (4) Except as provided in paragraph (2) of this subsection, the trustee shall segregate and account for any cash collateral in the trustee's possession, custody, or control.

11 U.S.C. § 363 (2008).

which held a security interest in her accounts receivable, or she obtained authorization from the Bankruptcy Court, after notice to the Bank of Castile and a hearing; (3) Sections 363(c)(2) and (4) imposed a fiduciary duty upon the Debtor to segregate and account for any such cash collateral, which she breached by failing to obtain the consent of the Bank of Castile or Court authorization to use the proceeds of her approximately $38,000.00 in accounts receivable, and by subsequently using all or a portion of those proceeds; and (4) the Court should determine that the debt due to the Bank of Castile on its Business Loan is nondischargeable pursuant to the provisions of Section 523(a)(4).

On August 29, 2008, the Debtor filed a Motion to Dismiss the Dischargeability Proceeding (the "Dismissal Motion"), which asserted that: (1) pursuant to the decisions of numerous courts, a commercial security agreement such as that alleged to have been entered into between the Debtor and the Bank of Castile, does not create the kind of fiduciary relationship required to support a cause of action under Section 523(a)(4); and (2) the Debtor's use of the proceeds of any accounts receivable could not support an embezzlement or larceny cause of action under Section 523(a)(4).[6]

---

[6] The Dismissal Motion did not address the allegation in the Complaint that the Debtor breached her fiduciary duty under Sections 363(c)(2) and (4) to segregate and not use any proceeds of accounts receivable when she had failed to obtain the consent of the Bank of Castile or a Court order authorizing her to use such proceeds. The Motion also failed to assert that the Bank of Castile had no

**Page 5**

On September 17, 2008, without permission of the Court or consent of the Debtor, the Bank of Castile filed an Amended Complaint in the Dischargeability Proceeding (the "Amended Complaint"), which added a second cause of action for willful and malicious injury pursuant to Section 523(a)(6).[7]

On September 25, 2008, the Bank of Castile filed a Memorandum of Law in opposition to the Debtor's Dismissal Motion (the "Memorandum in Opposition"). The Memorandum in Opposition asserted that: (1) at the January 28, 2008 Meeting of Creditors, testimony indicated that on the date the Debtor filed her petition, she had in excess of $38,000.00 in accounts receivable; (2) between the date of the filing of her petition on December 21, 2007 through the date of the entry of the Order of Conversion on May 7, 2008, the Debtor continued to operate her medical practice and use the prepetition accounts receivable without obtaining the required consent of the Bank of Castile or Court authorization; (3) the

---

cause of action because, consistent with her Schedules, the Debtor had no accounts receivable when she filed her Chapter 13 petition.

[7] Section 523(a)(6) provides that:

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523 (2008).

Page 6

failure of the Debtor to segregate or pay over to the Bank of Castile the proceeds of the collection of her prepetition accounts receivable, without having obtained the consent of the Bank of Castile or Court authorization, was a breach of the fiduciary duty imposed upon her as a Chapter 13 business debtor by the provisions of Sections 1304 and 363(c)(2) and (4); and (4) her use and conversion of those proceeds caused a willful and malicious injury to the Bank of Castile.

On September 26, 2008, the Debtor filed a Reply Affirmation (the "Reply") to the Memorandum in Opposition and its Amended Complaint, which asserted that: (1) the Amended Complaint was filed without the consent of the Debtor or Court authorization, as required by Federal Rules of Civil Procedure 15(a); (2) August 11, 2008 was the last day to file a Section 523 complaint objecting to the discharge of a debt, and the Bank of Castile had failed to file a separate complaint objecting to discharge pursuant to Section 523(a)(6) on or before that date; (3) permitting the Bank of Castile to proceed with a Section 523(a)(6) cause of action would be prejudicial to the Debtor; (4) Section 363(c) did not create a fiduciary relationship between the Debtor and the Bank of Castile within the meaning and intent of Section 523(a)(4); (5) business debtors in Chapter 13 cases were almost never required to enter into cash collateral agreements by creditors or the Trustee; and

**Page 7**

(6) there was nothing willful or malicious about the Debtor's use of the proceeds of her accounts receivable in her medical practice or for her personal living expenses, which is what she had always done with the knowledge of the Bank of Castile.

On the October 1, 2008 return date of the Dismissal Motion, neither the attorneys for the Debtor, who did not represent the Debtor in her Chapter 13 case, nor the attorney for the Bank of Castile, could answer the following questions asked by the Court: (1) why the Debtor scheduled the Business Loan as unsecured; (2) why her Schedules indicated that she had no accounts receivable on the date of the filing of her petition; (3) what the face amounts of the accounts receivable were on the date of the Meeting of Creditors, the entry of the Order of Conversion, or the return date of the Dismissal Motion; or (4) what prepetition accounts receivable the Debtor had collected and used.

The parties indicated that they did not wish to submit anything further, and the Court reserved decision on the Dismissal Motion.

## DISCUSSION

### I. Cash Collateral in Chapter 13 Business Cases

This Adversary Proceeding has brought to the attention of this Court (the Rochester Division of the Western District of New York), that the practices and procedures currently utilized in business

**Page 8**

Chapter 13 cases in this Division have been insufficient to: (1) focus the interested parties, debtors, attorneys for debtors, attorneys for secured parties who have an interest in cash collateral, and the Trustee, on the explicit duties of a Chapter 13 business debtor where there is cash collateral; and (2) ensure Debtors compliance with those duties.

Sections 1304 and 363(c)(2) and (4) explicitly impose upon a Chapter 13 business debtor the obligation to either: (1) obtain the consent of any secured party or Court authorization in order to use any cash collateral, including the proceeds of the collection of accounts receivable or the sale of inventory; or (2) segregate and account for that cash collateral.

In the future, this Court expects that Chapter 13 business debtors and their attorneys will immediately upon filing a petition, if not prior to the filing, address the issue of the use of cash collateral, and that attorneys for secured parties with an interest in cash collateral will also monitor this issue and enforce their rights and remedies in order to prevent any waiver arguments.

Furthermore, this Court expects the Trustee to address the use of cash collateral at the initial Section 341 meeting of creditors for all business debtors, if the Trustee has not otherwise been

**Page 9**

advised that the debtor has obtained the necessary consent or Court authorization for the use of cash collateral.

**II. Motions to Dismiss Complaints Under Section 523(a) for a Failure to State a Cause of Action**

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable by Rule 7008, requires that a pleading which sets forth a claim for relief contain a short and plain statement of the claim showing that the pleader is entitled to relief.

Rule 8(f) of the Federal Rules of Civil Procedure, requires that all pleadings be construed to do substantial justice.

Rule 9(b) of the Federal Rules of Civil Procedure, made applicable by Rule 7009, requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Rule 9(f) of the Federal Rules of Civil Procedure, provides that for the purpose of testing the sufficiency of a pleading, averments of time and place are material and shall be considered like all other averments of a material matter.

This Court, in considering motions to dismiss under Rule 7012 for a failure to state a claim upon which relief can be granted, is aware that: (1) the purpose of such a motion is to test the legal sufficiency of a complaint; (2) the Bankruptcy Court should view the complaint in a light that accepts the truth of all material

factual allegations and draw all reasonable inferences in favor of the plaintiff; (3) the complaint need only meet the liberal requirement of a short and plain statement of the claim that will give the defendant fair notice of plaintiff's claim and the grounds upon which it rests; and (4) nevertheless, the complaint should be well pled and it must contain more than mere conclusory statements that a plaintiff has a valid claim of some type and is thus deserving of relief, See *In re Johns Insulation, Inc.,* 221 B.R. 683, 687 (Bankr. E.D.N.Y. 1998) ("*Johns Insulation*") and the cases cited therein.

The Court is also aware that: (1) a motion to dismiss pursuant to Rule 7012 may not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief; and (2) the Bankruptcy Court is not entitled to consider matters outside the pleadings or to weigh evidence that might be presented at trial. See *In Re Albion Disposal, Inc.*, 217 B.R. 394, 401 (Bankr. W.D.N.Y. 1997).

The Court is further aware that: (1) justice requires that the defendant be served with a complaint which states the particular statute or code section relied upon by the plaintiff and a set of facts to provide the defendant with enough information to formulate and file an answer, See *In re Marceca,* 127 B.R. 328, 332 (Bankr. S.D.N.Y. 1991) ("*Marceca*"); (2) if the plaintiff is predicating his

**Page 11**

cause of action upon fraud, he must do so with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure, See *Marceca* at 332-33; and (3) if the Court relies upon matters found outside the complaint, it is required to convert the motion to dismiss into a motion for summary judgment, See *Johns Insulation* at 685.

In addition, the Court is aware that debtors generally will not file a motion to dismiss a complaint in an adversary proceeding brought under Section 523(a) when they believe that the complaint was simply inartfully prepared. This is because debtors know that Bankruptcy Courts, in the interests of justice and as they attempt to balance the policies of affording a debtor a fresh start with the direction that certain debts not be discharged, and that less than honest or uncooperative debtors not receive a discharge, are reluctant to dismiss an adversary proceeding brought under Section 523(a) simply because of an inartfully drawn pleading where facts and circumstances exist that might entitle the plaintiff to relief.

### III. **The Bank of Castile's Section 523(a)(4) Cause of Action**

This Court agrees with the Debtor that the allegations in the Complaint in the Dischargeability Proceeding fail to state a claim under Section 523(a)(4) upon which relief can be granted to the extent that any loss the Bank of Castile may have suffered from the Debtor's use of its cash collateral was the result of embezzlement

**Page 12**

or larceny.  Embezzlement, which is the fraudulent appropriation of property by a person to whom such property has been entrusted, does not include property owned by a borrower in which a lender has a security interest.  Larceny, which is the fraudulent and willful taking and carrying away of property of another with the intent to convert that property, does not apply to collateral in the hands of a borrower that owns the collateral when they are operating their business in a bankruptcy reorganization proceeding.

On the other hand, this Court believes that Sections 1304 and 363(c)(2) and (4) do make a Chapter 13 business debtor a fiduciary (a trustee) of an explicit statutory trust covering applicable cash collateral.

However, at this point in the Dischargeability Proceeding it is unclear to this Court whether the Debtor ever became aware of her fiduciary duties under Sections 1304 and 363(c)(2) and (4), or if she became aware of them only after the filing of the Business Loan claim or her attendance at the Meeting of Creditors when the issue of the accounts receivable was discussed,[8] because of:  (1) a possible misunderstanding of the terms of the Business Loan, which may have been evidenced by her scheduling the Business Loan as unsecured; (2) her legal representation in the Chapter 13 case;

---

[8]    Recently, the United States Court of Appeals for the Second Circuit in *In re Hyman*, 502 F.3d 61 (2d. Cir. 2007), held that there is a required component of conscious misbehavior or recklessness for a finding of defalcation.

or (3) the practices and procedures in existence in this Division during her Chapter 13 business case.

It is also unclear to this Court what, if any, waiver(s) of rights there may have been by the Bank of Castile, for example, by failing at the Meeting of Creditors to demand the segregation of any proceeds of accounts receivable in existence or that may be collected thereafter.

As a result, there could be a set of facts and circumstances presented to this Court that would result in it finding that the Debtor's use of the proceeds of her accounts receivable in which the Bank of Castile had an interest did constitute a defalcation while acting in a fiduciary capacity within the meaning and intent of Section 523(a)(4).

For these reasons, the Court denies the Dismissal Motion as to that portion of the Section 523(a)(4) cause of action that relates to defalcation while acting in a fiduciary capacity.

**IV.  The Amended Complaint and Section 523(a)(6) Cause of Action**

Although not the subject of the Dismissal Motion, because the Bank of Castile did not comply with the Federal Rules of Civil Procedure with respect to obtaining either authorization from the Court or the consent of the Debtor to file the Amended Complaint, this Court, in accordance with the standards it set down in *In re Anderson*, Chapter 7 Case No. 02-23651 (W.D.N.Y. April 9, 2003)

**Page 14**

would, upon a proper application, allow the Amended Complaint to include a Section 523(a)(6) cause of action, and it would relate it back to the original complaint.

The underlying assertion in the Amended Complaint setting forth a Section 523(a)(6) cause of action is the Debtor's improper use of the proceeds of prepetition accounts receivable in which the Bank of Castile had an interest, and the Debtor was clearly on notice of that assertion from the allegations set forth in the Complaint. Therefore, an amendment to include a Section 523(a)(6) cause of action would not, in this Court's view, be prejudicial to the Debtor who apparently has yet to account for any use by her of her unscheduled prepetition accounts receivable.

### CONCLUSION

The Dismissal Motion is granted with respect to any cause of action for embezzlement and larceny, but denied with respect to the cause of action for defalcation while acting in a fiduciary capacity. The Clerk's Office is directed to schedule a pretrial conference in the Dischargeability Proceeding.

**IT IS SO ORDERED.**

                                                           /s/
                                    **HON. JOHN C. NINFO, II**
                                    **U.S. BANKRUPTCY JUDGE**

**Dated: November 10, 2008**